Cephas BREWER *v.* STATE of Arkansas

CA CR 98-935                                  984 S.W.2d 65

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1998

*Theresa S. Nazario,* for appellant.

No response.

PER CURIAM. A motion has been filed by appellant's court-appointed counsel at trial to be relieved as counsel on the appeal of his criminal conviction and to allow his new and *retained* lawyer to be substituted as counsel on the appeal after appellant obtained a transcript of the trial record at State expense. We believe that there are serious factual issues to be resolved before we can decide the question; therefore, we are remanding the motion to the trial court.

Appellant was charged by information, tried to a jury, and eventually convicted following a four-day trial on two counts of rape involving victims younger than fourteen years of age. The trial court sentenced appellant to twenty years' imprisonment on each count and ordered the prison sentences to be served concurrently. Appellant petitioned the trial court for appointment of counsel on account of his professed indigency and was provided defense counsel at State expense. After appellant was convicted, his court-appointed lawyer dutifully filed notice of appeal and ordered a transcript of the trial proceedings to prepare the appeal. A two-volume trial transcript numbering almost a thousand pages and costing $2,748.60, based on the court reporter's invoices in the record, was provided to appellant's court-appointed lawyer at State expense on account of his indigency. On September 28, 1998, appellant's court-appointed lawyer tendered a motion to withdraw as counsel of record, but the motion was not filed until

after the clerk's office confirmed that it had been served on appellant (October 16, 1998).

The motion to withdraw states that appellant "has *hired private counsel* to pursue his appeal. Attorney Karen Pope Greenaway has obtained transcripts as evidenced by the attached receipt in order to perfect the appeal." (Emphasis added.) The referenced receipt is dated September 17, 1998.

A decision to grant the substitution of counsel would mean that the State of Arkansas has provided a free transcript worth almost three thousand dollars to someone who has somehow hired private counsel to appeal his conviction. On one hand, we could remand appellant's motion for substitution of counsel with instructions that it be granted after appellant reimburses the State for the cost of the trial transcript. We did so in *Smith v. State*, 63 Ark. App. 31, 970 S.W.2d 336 (1998). After all, the transcript is needed for the appeal. Appellant is the party contesting the result below and, therefore, the party responsible for ordering and lodging the record of the trial proceedings with the Court of Appeals. Appellant obtained a free transcript only because of his indigency based on the principle that the government-paid transcript was essential pursuant to his right to effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States. When he obtained funds to hire private counsel for the appeal, appellant could have also obtained the funds needed to reimburse the State for the cost of the transcript. We have no indication that appellant was or is now unable to obtain those funds, that he does not have those funds presently, or that he is otherwise unable or unwilling to reimburse the State. Without knowing whether this is the case, however, we hesitate to grant appellant's motion.

The other possibility is to remand the case to the trial court so that additional proceedings can be held. Remanding the case for consideration will not jeopardize appellant's right to appeal his conviction. If the trial court finds that reimbursement was not demanded — or that it was demanded but rejected by appellant's funding source — it can render findings concerning the reim-

bursement demand and response so that our court can intelligently decide whether it would be just to give appellant a taxpayer-paid trial transcript on one hand while allowing him to dump his tax-payer-paid lawyer in favor of one hired with private funds on the other. When did appellant obtain funds to hire private counsel and from what source? How much was obtained to procure the private attorney? Are there any valid reasons why the appellant cannot be directed to reimburse the State for the cost of the transcript? Has the State demanded reimbursement? If so, when was the demand made and why wasn't it honored?

We realize that the financial arrangements that litigants have with their privately retained lawyers are sensitive matters. We also acknowledge that some sources who fund hiring private counsel on appeal may balk at reimbursing taxpayers for the trial transcript and may withdraw their offers to pay for private counsel. And we recognize that our decision to remand means assigning this sensitive issue to trial judges who are already overloaded. Nevertheless, this situation begs for an informed judicial solution. The questions it presents are better addressed by trial judges who are able to conduct evidentiary hearings than by appellate judges sitting in panels or en banc.

Our decision to remand rather than to grant the motion to substitute counsel occurs in response to what appears to be a common practice whereby the State of Arkansas pays the cost of a trial transcript after an indigent criminal defendant files notice of appeal. Then the appellant hires private counsel to prosecute the appeal. From one perspective, this practice can be said to mock the notion of indigency and the reason for granting a free transcript to indigent appellants. To those who object to judicial inquiries into the sources of funds used to hire private counsel in criminal appeals after the appellants have been represented by court-appointed lawyers at trial, one need only remember that criminal defendants are provided court-appointed lawyers at trial and free trial transcripts on appeal only after trial courts have made findings of indigency and the accused persons have provided sworn evidence of that fact. Trial judges regularly include lan-

guage in the orders appointing counsel for indigent defendants that the accused and/or appointed-counsel has a duty to report the receipt of funds or other property that might be used to provide a defense. We see no rational basis for 'dismissing this fact-finding and reporting process during the appellate stage so as to permit supposedly indigent convicted felons to hire lawyers to prosecute appeals of their convictions using transcripts obtained at State expense without even a demand that the transcript cost incurred by taxpayers be reimbursed.

For decades, poor people who have sought government assistance on account of professed indigency have endured daily inquiries into their finances, the sources of their income, and even their living arrangements. Government employees of social-welfare agencies have gone into the residences of poor people, often unannounced and without preamble, to determine whether a husband, father, or some other source of financial assistance may have been living with a family seeking government assistance. Applicants for unemployment benefits are required to submit weekly reports of their efforts to obtain work and risk losing their benefits if they fail to do so. Our decision to remand so that the trial court can conduct an evidentiary hearing and render appropriate findings on this motion is, therefore, both judicially necessary and even-handed. If the people of Arkansas must provide a free trial transcript to convicted felons who hire their own lawyers on appeal, they at least deserve to know why they cannot be reimbursed for the transcript cost. They deserve to know why, when, and from what sources these appellants are finding money to hire lawyers to prosecute their appeals but not pay for the transcripts. By remanding the motion to substitute counsel, this and similarly situated appellants will be afforded a chance to prove continued indigency in the face of proof that they somehow have managed to hire private counsel on appeal.

▮ Therefore, we remand the case to the trial court with instructions that it conduct proceedings and render findings of fact relevant to the source of funds used to hire appellant's retained counsel, the date that the funds were obtained and counsel was

retained, and whether a demand was made on behalf of the State for reimbursement of the cost of the trial record. These proceedings and findings shall be conducted and rendered within forty-five days, after which the trial court shall refer the motion and its findings to our court for final disposition.

PITTMAN, JENNINGS, STROUD, NEAL, and ROAF, JJ., dissent.

JOHN E. JENNINGS, Judge, dissenting. While I agree with the majority of this court that there are potential problems in connection with the motion, I cannot join in the court's disposition. I would grant the motion.

The majority's concerns are quite reasonable. If criminal defendants are misusing the system to obtain transcripts at State expense when they are not entitled to do so, that is a cause for concern. But here we draw the inference that there is necessarily a problem and, on our own motion, remand the matter to the trial court with instructions. When we raise and decide issues sua sponte we are somewhat more likely to go astray.

It is the State, through the attorney general's office, who represents the people in criminal proceedings. I would leave it to the State to represent the people in this matter and ask for relief if the process is being abused. Here, the State has not opposed the motion for substitution of counsel.

Finally, I must concede that we took a similar approach in *Smith v. State*, 63 Ark. App. 31, 970 S.W.2d 336 (1998).

For the reasons stated, I respectfully dissent.

PITTMAN, STROUD, NEAL, and ROAF, JJ., join in this dissent.