Cephas BREWER *v.* STATE of Arkansas

CA CR 98-935 992 S.W.2d 140

Court of Appeals of Arkansas
En Banc
Opinion delivered May 19, 1999

*Theresa Nazario,* for appellant.

No response.

JOHN F. STROUD, JR., Judge. Appellant was tried by a jury and convicted of two counts of rape involving victims younger than fourteen years of age. On December 12, 1997, the trial court sentenced appellant to twenty years' imprisonment on each count and ordered that the sentences be served concurrently. Theresa Nazario, appellant's court-appointed attorney, filed notice of appeal and ordered the transcript of the trial proceedings. A two-volume transcript, consisting of almost a thousand pages and costing $2,748.60, was provided at the State's expense because appellant was indigent. On September 28, 1998, Ms. Nazario tendered her motion to withdraw as counsel of record, stating that appellant *"has hired private counsel to pursue his appeal.* Attorney Karen Pope Greenaway has obtained transcripts as evidenced by the attached receipt in order to perfect the appeal." (Emphasis added.) The motion was filed on October 16, 1998, on which date the clerk's office confirmed that it had been served on appellant. On October 13, 1998, Ms. Greenaway had filed her entry of appearance in this case.

When the motions to withdraw and to enter an appearance were originally filed, respectively, by the appellant's public defender and his retained counsel, this court issued a *per curiam* opinion. In it, we remanded the case to the trial court with instructions that it conduct proceedings and render findings of fact regarding the source of funds used to hire appellant's retained counsel, the date that the funds were obtained and counsel was retained, and whether a demand was made on behalf of the State for reimbursement of the cost of the trial record. *See Brewer v. State*, 64 Ark. App. 372, 984 S.W.2d 65 (1998).

On remand, the trial court found that the appellant was still indigent. The trial court explained that it could not consider the real property owned by the appellant and his wife because appellant had conveyed the real property to his wife when he was unable to make the payments on the property; that appellant had no income and no money in savings; that he was incarcerated in the state penitentiary; that the cost of the transcript was substantial, as was the cost to retain counsel; and that his wife (by then his ex-wife) and siblings had paid the cost of retaining private counsel for him.

■ ■ In response to the *per curiam* opinion that remanded this matter to the trial court, Judges Pittman, Neal, Roaf, and I concurred with Judge John Jennings's dissent to that *per curiam*. While we all agreed that any abuses in the process of obtaining transcripts by indigent defendants should be cured, the basis for the dissent was that this matter was best left to the State, through the attorney general's office, to represent the people and to ask for relief if such abuse was occurring. We reiterate that position here, now as the majority position, because we believe that in most instances the attorney general's office will be better suited than this court to supervise, investigate, and cure any abuses by indigent defendants in obtaining transcripts. In stating this preference, however, we do not in any way relinquish our authority to remand such matters to the trial court in appropriate circumstances. If all cases were to be remanded to the trial court to determine whether an appellant is still indigent after being repre-

sented by appointed counsel at trial and receiving a transcript at State expense, it should be only by rule that would apply to criminal cases in the supreme court and in the court of appeals. Rule-making authority lies with our supreme court, not the court of appeals. *See Jennings v. State,* 276 Ark. 217, 633 S.W.2d 373 (1982).

 Moreover, in any future instances in which we might decide to remand such a matter to the trial court, we will expect the trial court to follow the standards enunciated in *Hill v. State,* 305 Ark. 193, 805 S.W.2d 651 (1991), and *Hill v. State,* 304 Ark. 348, 802 S.W.2d 144 (1991):

> As we said when we remanded this matter, the burden of establishing indigency is on the defendant claiming indigent status. In considering whether an appellant is indigent, which is a mixed question of fact and law, some of the factors to be considered are the following: (1) income from employment and governmental programs such as social security and unemployment benefits; (2) money on deposit; (3) ownership of real and personal property: (4) total indebtedness and expense; (5) the number of persons dependent on the appellant for support; (6) the cost of the transcript on appeal; and (7) the likely fee of retained counsel for the appeal. Hill, 304 Ark. 348, 802 S.W.2d 144. Able-bodiedness and the level of education of the appellant are also given some consideration as is whether the appellant himself paid the cost of the appeal bond or has control or complete discretionary use of funds raised by others for his defense.

305 Ark. 193, 194, 805 S.W.2d 651, 652-53.

> The ability of bystanders such as friends and family members to post bond or assist with expenses is not a factor in determining the appellant's indigency since indigency of the appellant does not depend on the financial position of his family and friends. Bystanders have no obligation to the state. An exception could be made, however, where the appellant has control or complete discretionary use of funds raised by others.

304 Ark. 348, 351, 802 S.W.2d 144, 145-46 (citations omitted).

■　Here, the trial court found that the appellant was still indigent and that the funds for private counsel were provided by the appellant's ex-wife and siblings. In accordance with *Hill*, 304 Ark. 348, 802 S.W.2d 144, the ex-wife and siblings had no obligation to the State to pay the cost of the transcript. Consequently, we accept the trial court's finding that appellant is still indigent, and we therefore find that Ms. Nazario's motion to withdraw as counsel should be granted.

Motion granted.

PITTMAN, JENNINGS, BIRD, NEAL, CRABTREE, MEADS, and ROAF, JJ., agree.

GRIFFEN, J., ROBBINS, C.J., HART and ROGERS, JJ., dissent.

JUDITH ROGERS, Judge, dissenting. I dissent, not because I disagree with the law as set out in *Hill v. State*, 305 Ark. 193, 805 S.W.2d 651 (1991), but because we have encountered a problem in its application. It is apparent, however, to a few judges on this court that there appear to be defendants who claim indigency, thereby avoiding the costs of a transcript, and then immediately obtain private counsel to pursue the appeal. This appears to be a stratagem for avoiding the costs of a transcript and shifting such costs from the alleged perpetrators of the crimes to the rest of the taxpayers (*i.e.*, the State).

WENDELL L. GRIFFEN, Judge, dissenting.

*Facts are stubborn things. . . .* — JOHN ADAMS, *ARGUMENT IN DEFENSE OF THE SOLDIERS IN THE BOSTON MASSACRE TRIALS*

*This is our chief bane, that we live not according to the light of reason, but after the fashion of others.* — SENECA, *OCTAVIA*

I respectfully dissent from our decision to unconditionally grant the motion by Theresa S. Nazario, appellant's court appointed attorney, to withdraw as his attorney and to allow Karen Pope Greenaway, an attorney retained by his ex-wife and siblings, to be substituted as counsel in his appeal. After reviewing the record of the proceedings on remand, I believe more strongly

than ever that we should follow our decision in *Smith v. State*, 63 Ark. App. 31, 970 S.W.2d 336 (1998), and only grant the motion conditioned upon the State being reimbursed the cost of the trial transcript. Despite the clear requirement in Rule 16 of the Rules of Appellate Procedure—Criminal, neither the interest of justice nor other sufficient cause has been shown for allowing appellant to dump his taxpayer-paid lawyer after having obtained a free trial transcript worth almost three thousand dollars so that he can now pursue his appeal with a hired lawyer to whom his ex-wife and siblings have paid $10,000 (more than three times the cost of the trial transcript), yet not require that the transcript cost be reimbursed to the State. If anything, the factual history of this case confirms the very concern mentioned in our per curiam to remand, namely, that the notion of indigency and the reason for granting a free transcript to indigent appellants is being mocked.

Appellant was charged by information, tried to a jury, and convicted following a four-day trial on two counts of rape involving victims younger than fourteen years of age. On December 12, 1997, the trial court sentenced appellant to twenty years' imprisonment on each count and ordered that the prison sentences be served concurrently. Nazario, appellant's court appointed lawyer, filed notice of appeal and ordered the transcript of the trial proceedings. A two-volume transcript numbering almost a thousand pages and costing $2,748.60 was provided to Nazario on account of appellant's indigency.[1] Nazario tendered a motion to withdraw as counsel of record on September 28, 1998, but the motion was not filed until October 16, 1998, when the clerk's office confirmed that it had been served on appellant. The motion states

---

[1] Our court granted appellant's motion for rule on the clerk so as to permit a belated appeal on July 31, 1998. On September 10, 1998, the two-volume transcript was lodged in the clerk's office. On October 12, 1998, the clerk of our court apparently granted Nazario's motion to extend the due date for filing appellant's abstract and brief until October 27, 1998. That the motion was filed to accommodate Greenaway, the lawyer engaged to handle the appeal for $10,000, is self-evident because the transcript was delivered to Greenaway on September 17, 1998 — a week after it was lodged with the clerk of our court — and because Nazario's motion to withdraw was filed on September 28, 1998, well before she moved to extend the due date for filing appellant's abstract and brief.

that appellant "has *hired private counsel to pursue his appeal.* Attorney Karen Pope Greenaway has obtained transcripts as evidenced by the attached receipt in order to perfect the appeal." (Emphasis added.) The referenced receipt is dated September 17, 1998, eleven days before Nazario tendered the motion to withdraw and seven days after the transcript was filed with the clerk's office. We issued a per curiam decision and remanded the case to the trial court for an evidentiary hearing to establish the facts behind appellant's ability to hire counsel after obtaining a free trial transcript based on professed indigency. *See Brewer v. State,* 64 Ark. App. 372, 984 S.W.2d 65 (1998).

The record developed on remand shows that Greenaway was hired by appellant's family after he was imprisoned. During cross examination by counsel for the State, appellant testified as follows:

Q. Mr. Brewer, do you want Ms. Greenaway to represent you?

A. Ms. Greenaway will represent me, yes.

Q. Was she hired with your approval?

A. She was hired beyond my knowledge. I was incarcerated down there when I found out that they had hired her. They notified me after they had hired her.

Q. So you want her to be your attorney?

A. If she's been paid for it, sure.

Q. Okay. And she was paid or hired to represent you; is that true?

A. *As far as I understand they hired her to represent me. My family did, yes.*

Q. Do you know how much money they paid her —

A. Not right offhand, no.

Q. *So do you know if they could pay for the transcript since they paid for her?*

A. If my family *could* pay for the transcript? No, they *shouldn't.*

Q. You don't think they should?

A. *No, I don't think they should.*

Q. Why not?

A. *Because I hired — I hired the State to represent me, the State found me guilty, the State put me incarcerated. No funds, no money, so why should my family pay something that they just helping me to do now? They just love me, now, and represent to me to get a lawyer to represent my case.*

Alleen Brewer, appellant's ex-wife, testified at the hearing on remand that although appellant had been represented by two appointed lawyers at trial based on his professed indigency, she initially consulted Bill Putnam, Jr., about handling the appeal in January 1998. Putnam agreed to handle the appeal for $10,000, and Ms. Brewer testified that appellant's siblings paid the first $5,000 of that fee to Putnam. However, Putnam withdrew in May or June 1998 after learning that he had a conflict of interest arising from representing several Benton County officials. Putnam referred her to Karen Pope Greenaway, who also agreed to handle the appeal for $10,000. Putnam sent the first $5,000 payment to Greenaway on September 24, 1998, four days before Nazario, appellant's court-appointed counsel, moved to withdraw.

*Meanwhile, appellant quitclaimed the couple's residence — valued at $50,000 with a $43,000 mortgage — to his wife in March 1998. Alleen Brewer then obtained a divorce on June 9, 1998. She wrote a check for the second $5,000 owed Greenaway on December 11, 1998, and testified that she obtained those funds by taking a second mortgage out on the house that appellant had transferred to her before their divorce.* Ms. Brewer testified on cross-examination that Putnam or Greenaway "may have mentioned" the need for obtaining a transcript on appeal. Although the Court of Appeals has not granted the motion to withdraw or granted leave for Greenaway to enter an appearance as counsel for appellant (she merely filed an entry of appearance without leave), Greenaway has, by her own admission, "already done the work, the brief is nearly finished. . . ." (Remand transcript, 40.)

Following the hearing on remand, the trial judge entered the following findings:

1. The fee for the services of Ms. Greenway (*sic*) was paid by the Defendant's former wife, Alleen Brewer, and his brothers and sisters.

2. The Defendant is without any assets with which to pay the costs of the transcript.

3. The former wife and brothers and sisters of the Defendant are not legally obligated to pay the cost of the transcript.

4. The transcript of this hearing together with these findings are hereby referred to the Arkansas Court of Appeals for disposition.

Although the trial judge observed that appellant's ex-wife and siblings have no legal obligation to pay the cost of the appeal transcript, that conclusion does not control whether we should grant the pending motion by Nazario to withdraw without conditioning that the cost of the trial transcript be reimbursed to the State. Rule 16 of the Rules of Appellate Procedure—Criminal provides:

> Trial counsel, whether retained or court appointed, shall continue to represent a convicted defendant throughout any appeal to the Arkansas Supreme Court, unless permitted by the trial court to withdraw *in the interest of justice or for other sufficient cause.* After the notice of appeal of a judgment of conviction has been filed, the Supreme Court shall have exclusive jurisdiction to relieve counsel and appoint new counsel. (Emphasis added.)

Appellant's family is certainly entitled to retain counsel to prepare a brief if they choose to pay for it. However, their freedom to do so does not mean that the interest of justice or other sufficient cause exists for permitting Nazario to withdraw and Greenaway, the retained lawyer, to pursue the appeal with a free transcript while all other criminal defendants whose appeals are advocated by retained counsel must pay for their transcripts. The interest of justice supports permitting Greenaway to be substituted as counsel on appeal and Theresa Nazario permitted to withdraw

only upon payment of the cost of the trial transcript, for the reasons stated in our previous per curiam. It is obvious that appellant accepted the services of appointed counsel at trial, transferred property from himself to his wife that could have been used to hire a lawyer after he was convicted, and knew that his wife and siblings were maneuvering to retain counsel based on the transcript that had been provided to him without cost because of his indigency.[2] If appellant desires to accept the services of retained counsel and desires that the Court of Appeals permit Greenaway to prosecute his appeal, his agents should accept the responsibility of paying the cost of the trial transcript the same as every other criminal defendant who is represented by retained counsel.

The Court of Appeals is under no obligation to permit Greenaway to represent appellant on the appeal at almost four times the cost of the trial record while the State goes unreimbursed for the transcript cost. Greenaway has no right to represent appellant as long as he is represented by Nazario and his constitutional right to counsel is fully satisfied by Nazario's representation. Nazario is obligated to continue the representation until relieved, and Greenaway cannot even file an *amicus* brief supporting the appeal without leave of the Court of Appeals [*See* Rule 4-6(a),

---

[2] Appellant retained Mark McBeth when he was first charged below, and testified during the proceeding on remand from our previous per curiam that he paid McBeth "around $1,500." Remand Tr., p.19. McBeth was suspended from practicing law in Arkansas, according to the trial court's statement during the hearing on remand. Thereafter, appellant filed a petition to proceed in forma pauperis on June 2, 1997, and was determined by the trial judge to be indigent on the date that the petition was filed. Trial Tr., pp. 54-56. Apparently the trial court appointed Jack Shisler of the public defender's office and later Tim Morris (in private law practice) to assist Deputy Public Defender Theresa Nazario in rendering the defense at trial. Based on an Order of Compensation filed on December 31, 1997 that appears at page 134 of the trial transcript, the trial court ordered Morris paid an attorney's fee of $6,985 for his services assisting the defense. The record does not reflect that Morris was permitted to withdraw by the trial court or that he has sought to withdraw by motion to the Court of Appeals.

The notice of appeal was filed January 20, 1998 by Nazario, and recites that "[b]y copy of this Notice, the transcript has been ordered from Kathryn Pierson, the Court Reporter in this case, whose business address is Benton County Courthouse, Bentonville, Arkansas. Financial arrangements to pay for the transcript have been made with the Court Reporter pursuant to Ark. Code Ann. § 16-13-510(c)." Tr. 145.

Supreme Court Rules.] Unless the people who have already paid $10,000 to Greenaway for a brief that has not been filed and which cannot be filed without our decision to permit Nazario to withdraw and Greenaway to enter the appeal desire to lose the benefit of that investment, they will reimburse the State's cost for the two-volume trial transcript.

Therefore, I do not understand our unwillingness to grant the pending motion and permit Nazario to withdraw and Greenaway to be substituted as counsel for appellant subject to the condition that the State first be reimbursed for the cost of the trial transcript. Given Greenaway's statement during the February 3, 1999 hearing on remand that the brief was almost completed, the brief should be completed by now and ready for immediate filing. Given Alleen Brewer's testimony that Putman and Greenaway "may have mentioned" the need for obtaining the trial transcript to prepare the appeal, appellant's family already know that we can require that they reimburse the State for the transcript cost as a condition to Greenaway's substitution for Nazario.[3] And in view of our per curiam order in *Smith v. State, supra,* attorneys should know that we will grant such motions after the State has been reimbursed for the cost of the trial transcript.

In light of the plain language in Rule 16 that trial counsel are duty-bound to represent convicted defendants throughout the course of their defense unless the interests of justice or other sufficient cause warrant withdrawal, the clear evidence that appellant and his family have maneuvered to switch from appointed counsel

---

[3] It is clear from appellant's testimony on remand that his ex-wife and siblings are unwilling to reimburse the State's cost for the trial transcript unless compelled to do so. Appellant appears to believe that his family *should not* reimburse the transcript cost because "the State found me guilty, the State put me incarcerated. . . [S]o why should my family pay something that they just helping me to do now?" While appellant's displeasure with the State on account of his conviction is understandable, it does not justify allowing his court-appointed lawyer to withdraw and be substituted by retained counsel whose efforts have been procured by his agents. That displeasure also does not justify treating those agents any differently from any other non-parties to an appeal, nor does it justify suspending application of the Rules of Appellate Procedure—Criminal to their effort to replace appellant's appointed counsel.

to retained counsel after securing the trial transcript at State expense, the concerns expressed in our previous per curiam opinion in this case, and our action in *Smith v. State, supra*, I cannot fathom why the interest of justice is served by our decision to simply grant Nazario's motion to withdraw. I do not understand why we are willing to acquiesce in mocking "the notion of indigency and the reason for granting a free transcript to indigent appellants" in the face of plain proof that half of the $10,000 fee paid to Greenaway comes from an asset that appellant quitclaimed to his now ex-wife *before they divorced with full knowledge that she was trying to raise money to hire a new lawyer.* It is manifestly unjust for us to compel all other criminal defendants and their family members to pay for appeal transcripts along with sacrificing to hire their lawyers, yet refuse to even follow our own published per curiam in *Smith v. State* to require that the transcript cost be reimbursed as a condition to Nazario being permitted to withdraw so that Greenaway can pursue this appeal.

The result I advocate respects the trial court's findings that appellant is indigent and that he lacks funds with which to reimburse the State for the transcript cost. My position would not deprive appellant the effective representation guaranteed by the federal Constitution on account of his indigency. And my position would not prevent appellant's family from providing legal counsel that they (and he) apparently prefer, but which his family has no legal obligation to provide. It is beyond debate that while an indigent defendant has a right to an attorney on appeal, he does not have the right to an attorney of his choosing. *See Malone v. State*, 291 Ark. 315, 724 S.W.2d 180 (1987). We must simply be willing to vindicate the interest of justice in the face of a practice that reeks of disingenuity and mocks the reason for providing free transcripts to indigent defendants who appeal their convictions. The present decision signals our unwillingness to vindicate justice in the face of the plain and uncontroverted proof.

Seneca, the Stoic philosopher, once remarked that what used to be vices become fashions. As our previous per curiam in this case stated, the ruse employed in this case is a common practice.

This is but one of several appeals now pending with motions to permit the withdrawal of appointed counsel and the substitution of retained counsel after appellants have been provided free trial transcripts at State expense. More such motions are sure to follow. Regrettably, our court appears disposed to authorize a fashionable vice — but a vice nonetheless — despite the stubborn facts that we commanded the trial court to develop, and despite a clear supreme court rule obligating us to consider the interest of justice in deciding whether to permit counsel to withdraw. I refuse to go quietly into that night, nor will I pretend that it is just.[4]

I am authorized to state that ROBBINS, C.J., ROGERS and HART, JJ., join in this dissent.

---

[4] Judge Stroud's majority opinion cites *Hill v. State*, 304 Ark. 348, 802 S.W.2d 144 (1991), regarding the standards applicable to determining whether a defendant is indigent. Our supreme court recognized in that case, as Judge Stroud has quoted, that bystanders have no obligation to the State. The supreme court added, "[a]n exception could be made, however, where the appellant has control or complete discretionary use of funds raised by others." *Id.* 304 Ark. 351. Here, appellant has complete discretion whether to accept Greenaway's services which were obtained from funds raised by others. If this situation does not fit the exception contemplated by the supreme court, I cannot think of many that are better.

I agree that the State should seek relief in these instances. However, the State appeared before the trial judge during the remanded hearing and argued for reimbursement. Moreover, when a defendant's motion to withdraw is involved, it is the duty of the courts and judges to decide and declare whether justice will be served by permitting withdrawal — and on what conditions — no matter how troublesome it may be to exercise that duty and however much the litigants and their advocates may want us to ignore it. Regarding the majority view that we need a specific rule to require reimbursement for transcripts where the indigent defendant obtains and seeks to substitute private counsel, the decision on this motion demonstrates we lack the resolve to enforce existing Rule 16. Another rule will not cure that affliction.