

Cite as 2015 Ark. App. 340

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-14-928

| | |
|---|---|
| ALAN RAY EDWARDS APPELLANT | **Opinion Delivered** May 27, 2015 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-2012-539] |
| STATE OF ARKANSAS APPELLEE | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Appellant Alan Ray Edwards was convicted of murder in the first degree with a firearm enhancement and criminal attempt to commit murder in the first degree. Edwards was sentenced to sixty-five years' imprisonment in the Arkansas Department of Correction. For his sole point on appeal, Edwards argues that the trial court erred in granting the State's motion in limine barring expert testimony concerning Edwards's capacity to form intent. We affirm.

Edwards does not challenge the sufficiency of the evidence to support his convictions. Accordingly, a lengthy recitation of the facts is unnecessary. The charges against Edwards arose out of an incident on September 3, 2012, at the Pop-A-Top Lounge in Hot Springs, Arkansas. Edwards and James "Toby" Fowlks were both at Pop-A-Top that day; Edwards had been a regular customer at the club, but had recently been banned from the premises after he threatened to kill a female bartender and everyone in the club. Edwards was apparently

unaware that he had been banned from the club until he arrived on September 3. When another bartender, Teresa Williams, informed him that he was no longer allowed at the club, Edwards began "rantin' and ravin' and cussin'." Fowlks intervened and chased Edwards outside the club where Fowlks hit him in the face, causing a bloody nose.

Edwards then got in his truck and drove away. Edwards returned to the club roughly half an hour later with a shotgun and shot Fowlks twice, killing him instantly. Edwards then turned the gun towards Williams and fired two shots at her, but missed. As Edwards exited, he was apprehended by witnesses in the parking lot. The shooting was videotaped by club cameras, though no audio was recorded.

On November 12, 2012, Edwards was charged with one count of murder in the first degree with a firearm enhancement and one count of criminal attempt to commit murder in the first degree. After Edwards filed a motion for mental evaluation, the court ordered that he undergo examination by Dr. Paul Deyoub. On January 2, 2013, Dr. Deyoub submitted his forensic evaluation, which found that Edwards was fit to proceed, did not have a mental disease or defect, had the capacity to form intent, had the capacity to appreciate the criminality of his conduct, and had the capacity to conform his conduct to the requirements of the law.

Edwards contested Dr. Deyoub's findings, and Edwards's request for an independent evaluation was granted. Dr. Albert Kittrell was employed to perform the evaluation. Dr. Kittrell submitted his forensic evaluation on September 18, 2013. He concluded that Edwards was fit to proceed, had a mental disease—a psychotic disorder not otherwise specified

SLIP OPINION

(NOS)—but no mental defect, did not have the capacity to form intent, and had the capacity to conform his conduct to the requirements of the law.

A hearing was held on October 7, 2013, and Edwards stipulated that he was fit to proceed. Dr. Kittrell testified that Edwards did not have the capacity to form the required culpable mental state based upon his finding that Edwards suffered from a psychotic disorder NOS and had lost contact with reality. Specifically, Dr. Kittrell based his opinion on Edwards's report of having visual and auditory hallucinations and being paranoid without ever having received proper treatment. On cross-examination, Dr. Kittrell confirmed that he believed that Edwards was competent to stand trial. At the conclusion of the hearing, defense counsel made a motion for judgment of acquittal on the mental-disease-or-defect issue because Edwards lacked the capacity to form the requisite culpable mental state, an element of the offense. The court denied the request, citing the conflicting opinions concerning the issue.

A jury trial was held May 21 and 22, 2014. Prior to jury selection, the State moved in limine to exclude Dr. Kittrell's opinion that Edwards lacked the capacity to form the requisite culpable mental state, relying on *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994), and *Bruner v. State*, 2013 Ark. 68, 426 S.W.3d 386. After briefly taking the matter under advisement, the circuit court found that the *Stewart* case was directly on point and granted the State's motion. On May 22 the jury found Edwards guilty of murder in the first degree, the firearm enhancement, and criminal attempt to commit murder in the first degree. The

sentencing order was entered on June 4, 2014, and this timely appeal follows.[1]

Edwards's only argument on appeal is that the trial court erred in granting the State's motion in limine barring Dr. Kittrell's expert testimony of Edwards's lack of capacity to form intent. The trial court relied solely on *Stewart*, *supra*, when making its decision. In that case, a clinical psychologist concluded that Stewart had a mental defect that rendered him unable to conform his behavior at the time he fatally shot a man after they exchanged heated words in a café. A psychiatrist who also examined Stewart disagreed, opining that Stewart did not suffer from a psychotic illness. As in this case, on the day of trial, the circuit court granted the State's motion in limine, which limited the expert testimony and precluded the defense from asking the doctors if Stewart lacked the specific intent to commit murder at the time of the killing. *Stewart*, 316 Ark. at 155–56, 870 S.W.2d at 753–54.

The *Stewart* court acknowledged that jurisdictions in this country are split over the issue of whether expert testimony on the ability of a defendant to form specific intent to murder is admissible, but held that "the better view, in our judgment, is that it is not." *Id*. at 158, 870 S.W.2d at 755. The court further explained:

> Other jurisdictions have held that expert testimony on specific intent to murder is inadmissible. *See, e.g.*, *Haas v. Abrahamson*, 910 F.2d 384 (7th Cir. 1990); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (Neb. 1990); *State v. Clements*, 789 S.W.2d 101 (Mo. App. 1990); *State v. Bouwman*, 328 N.W.2d 703 (Minn. 1982). According to the Nebraska Supreme Court, expert testimony on homicidal intent is merely an expression of an expert on how the jury should decide the case. *State v. Reynolds*, *supra*. We agree. We further agree that the issue of whether the defendant formulated intent

---

[1] On November 19, 2014, we remanded this case for a hearing pursuant to *Brewer v. State*, 66 Ark. App. 324, 992 S.W.2d 140 (1999), after a motion to substitute retained counsel was filed on October 29, 2014. At a hearing on December 1, 2014, the trial court found Edwards to be indigent, and an order was entered the same day.

SLIP OPINION

to kill is within the capability of lay jurors to decide. *State v. Clements*, *supra*. While expert testimony on whether a defendant lacked the capacity to form intent is probative, we question whether opinion evidence on whether the defendant actually formed the necessary intent at the time of the murder is. *State v. Bouwman*, *supra*.

*Id*. at 159, 870 S.W.2d at 755–56.

The *Stewart* court also expounded on the distinction between the two categories of expert testimony. Whether the defendant had the requisite capacity at the time of the killing is a decision best left to the jury:

> [P]sychiatric testimony concerning whether a defendant has the ability to conform his conduct to the requirements of law at the time of the killing as part of an insanity defense may seem in some cases to approximate testimony on whether the defendant had or did not have the required specific intent to commit murder at a precise time. We draw a distinction between the two categories of testimony, however. A general inability to conform one's conduct to the requirements of the law due to mental defect or illness is the gauge for insanity. It is different from whether the defendant had the specific intent to kill another individual at a particular time. Whether Stewart was insane certainly is a matter for expert opinion. Whether he had the required intent to murder Ragland at that particular time was for the jury to decide.

*Id*. at 159, 870 S.W.2d at 755.

Our supreme court and this court have consistently followed the rationale of *Stewart* for over twenty years, and the instant case is directly on point with the facts and legal analysis presented in *Stewart*. Both Drs. Deyoub and Kittrell agreed that Edwards understood the proceedings against him, was capable of assisting in his own defense, was able to appreciate the criminality of his conduct, and could conform his conduct to the requirements of the law. The only dispute between the doctors' respective conclusions was that Dr. Deyoub believed that Edwards had the capacity to form intent and Dr. Kittrell opined that Edwards did not. Based on the ruling in *Stewart*, the decision whether Edwards had the requisite intent to

5

commit his crimes was an ultimate issue for the jury to decide, and it was not proper for any witness—even an expert—to testify concerning that issue.

At trial, both Drs. Deyoub and Kittrell testified as to Edwards's mental health, and the trial court instructed the jury on the affirmative defense of mental disease or defect. The jury heard the testimony concerning Edwards's mental status and was fully capable of deciding if Edwards had the capacity to form intent without either of the doctors testifying as to their opinion on that specific matter.

The circuit court ruled that only a single aspect of Dr. Kittrell's testimony was inadmissible. Dr. Kittrell was allowed to testify as to all other opinions and findings related to Edwards's mental health, and the jury was instructed on the affirmative defense of mental disease or defect. The decision to admit or exclude evidence pertaining to the defendant's ability to form intent is left to the trial court's sound discretion, and we will not reverse absent an abuse of that discretion. *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818. Here, the trial court did not abuse its discretion in refusing to permit the expert opinion concerning Edwards's ability to form the requisite mental intent at the time he shot Fowlks. Therefore, we affirm.

Affirmed.

GLOVER and BROWN, JJ., agree.

*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.