SLIP OPINION

Cite as 2015 Ark. 377

# SUPREME COURT OF ARKANSAS

No. CR–15–494

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** October 22, 2015 |
| ALAN RAY EDWARDS | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR12-539] |
| V. |  | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED; COURT OF APPEALS OPINION VACATED. |

**JOSEPHINE LINKER HART, Associate Justice**

A jury found appellant, Alan Ray Edwards, guilty of first-degree murder, attempted first-degree murder, and a firearm enhancement, and he was sentenced to a total of sixty-five years' imprisonment. The Arkansas Court of Appeals affirmed his convictions. *Edwards v. State*, 2015 Ark. App. 340, 464 S.W.3d 473. Edwards then petitioned this court for review, and we granted the petition. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *See, e.g.*, *Bohannon v. Robinson*, 2014 Ark. 458, at 4, 447 S.W.3d 585, 587. On appeal, Edwards argues that the circuit court abused its discretion in excluding expert-witness testimony concerning his lack of capacity to form intent. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion or absent a showing of prejudice. *Bruner v. State*, 2013 Ark. 68, at 11–12, 426 S.W.3d 386, 393. We affirm the circuit

court.

The shootings occurred at Pop-A-Top Club in Hot Springs, Arkansas. A number of patrons and employees testified at the trial. To summarize, on August 28, 2012, Edwards offered a $200 tip to Eliza Beth McDaniel, a bartender, which she refused. Edwards nevertheless slipped the money into her unattended purse. The next day, Edwards returned to the bar and asked the bartender if she had received the "surprise." She unsuccessfully tried to return the money to Edwards. On August 31, 2012, he returned to the bar and asked if she would go out with him. Because Edwards was married, she declined. Edwards then demanded the money back and threatened to kill her. She returned $62, which was all the money she had on her, and offered to return the remainder in a few days. Edwards told her that she had better return the rest of the money or he would kill her and everyone in the bar. The bartender reported the incident to the owner and the manager, but rather than reporting it to the police, the owner and the manager decided that Edwards would no longer be allowed in bar.

On September 3, 2012, at 3:00 p.m., Edwards entered the bar and was told by the acting manager, Teresa Williams, that he could not enter the bar until he spoke with the owner. Edwards began arguing, and a customer, Toby Fowlks, told Edwards that he needed to leave. Edwards told Fowlks that he was not scared and that Fowlks could not "kick" his "ass." Fowlks chased Edwards out of the bar. Outside, Fowlks struck Edwards in the face, and Edwards left in his vehicle.

Less than an hour later, Edwards returned to the bar with a shotgun in his hands, and asked, "Where's that son of a bitch that hit me?" After seeing Fowlks, Edwards said, "Oh,

there you are," and shot Fowlks twice, killing him. Edwards then turned to the bartender and said, "Fuck you too." He shot twice at her but she ducked behind a gaming machine, thus avoiding injury. When Edwards left the bar, other patrons at the bar followed him, and after a struggle, the patrons were able to disarm Edwards.

Prior to trial, Edwards obtained the services of Dr. Albert Kittrell, an expert in the field of psychiatry and forensic psychiatry. Doctor Kittrell conducted an evaluation of Edwards in which he opined in his report that Edwards suffered from a mental disease—a psychotic disorder not otherwise specified—at the time of the offenses. Doctor Kittrell noted that, at the time of the offenses, "several factors impacted Mr. Edwards's capacity for purposeful conduct" and that he was "experiencing considerable emotional upheaval." Doctor Kittrell, however, opined that, even though Edwards was diagnosed with a mental disease and was psychotic at the time of the offenses, Edwards nonetheless did not lack the capacity to appreciate the criminality of his conduct and did not lack the capacity to conform his conduct to the requirements of the law at the time of the offenses. In his summary, Dr. Kittrell noted that "Edwards had impairment in his capacity to have culpable mental state required to establish an element of the offenses charged."

At an in-camera hearing on Edwards's fitness to proceed, with the circuit court presiding, Dr. Kittrell was asked on what he "base[d] the fact that [Edwards] had the impairment of the . . . culpable mental state?" Dr. Kittrell noted the diagnosis of a psychotic disorder not otherwise specified, meaning that "at some point he had lost contact with reality and when I saw him he continued to have ongoing impairment." Doctor Kittrell noted that

Edwards told him that he hallucinated and heard voices and was suspicious and paranoid. Doctor Kittrell noted that Edwards had not received treatment for these conditions.

On the day of the trial, the State argued that Dr. Kittrell should not be allowed to testify that he did not believe that Edwards "had the ability to do a purposeful mental state." In response, Edwards's attorney asserted that Edwards was entitled to a defense and that the jury should determine whether he had a culpable mental state. The court took the motion under advisement, and during the trial, the court ruled that "Dr. Kittrell cannot testify to his opinion as to whether [Edwards] had the capacity to form a purposeful intent." The court instructed Dr. Kittrell that he could render an opinion on Edwards's "ability to conform his conduct to the requirements of the law" but could not opine "as to his ability to form the requisite mental intent for this crime."

During his testimony, Dr. Kittrell again opined that Edwards suffered from a mental disease, a psychotic disorder not otherwise specified. He noted that Edwards suffered from auditory hallucinations. The doctor further noted that Edwards was limited in his ability to handle stressful situations. On cross-examination, Dr. Kittrell testified that in his report he had opined that Edwards's psychotic disorder did not render Edwards unable to appreciate the criminality of his conduct and did not render him unable to conform his conduct to the requirements of the law.

On appeal, Edwards asserts that Dr. Kittrell concluded that he lacked the capacity to form intent and that the circuit court erred in excluding that testimony. He argues that under *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994), while Dr. Kittrell could not testify as

to whether he actually formed the requisite intent during the commission of the offense, Dr. Kittrell was permitted to testify that he lacked the capacity to form intent. He asserts that the jury could have accepted Dr. Kittrell's testimony on the presence of a mental disease and lack of capacity to form intent, while rejecting the notion that a person could simultaneously appreciate the criminality of his conduct and conform that conduct to the requirements of the law, and thus find him not guilty by reason of mental disease or defect. He concludes that he was prejudiced by the circuit court's ruling because his entire defense was that he lacked the capacity to form intent. He argues that, had the jury heard the testimony, there was a reasonable probability that the jury would have acquitted on the first-degree charges and given him a lesser sentence, or have acquitted on the lesser charges as well. He further asserts that the circuit court denied him due process by depriving him of his only defense.

A person commits murder in the first degree if, with the purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2013). A person acts purposely with respect to his conduct or as a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged he lacked capacity as a result of mental disease or defect to conform his conduct to the requirements of law or appreciate the criminality of his conduct. Ark. Code Ann. 5-2-312(a)(1) (Repl. 2013). We note that a report of a criminal-responsibility examination shall include an opinion as to whether, as the result of a mental disease or defect,

the defendant, at the time of the alleged criminal conduct, lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Ark. Code Ann. § 5-2-305(d)(3)(A) (Repl. 2013). Further, when directed by the court, the report also is to contain "an opinion as to the capacity of the defendant to have the culpable mental state that is required to establish an element of the offense charged." Ark. Code Ann. § 5-2-305(d)(3)(B). "Capacity of the defendant to have the culpable mental state" means a defendant's ability to have the culpable mental state necessary to establish an element of the offense charged. Ark. Code Ann. § 5-2-301(2) (Repl. 2013). Further, our statutes provide that "[e]vidence that the defendant suffered from a mental disease or defect is admissible to prove whether the defendant had the kind of culpable mental state required for commission of the offense charged." Ark. Code Ann. § 5-2-303 (Repl. 2013).

In *Stewart*, 316 Ark. 153, 870 S.W.2d 752, the State moved in limine to prevent expert-witness testimony as to whether the defendant "acted with the purpose to cause" the victim's death or whether the defendant "lacked the specific intent to do so at the time of the murder." The circuit court granted the motion. At trial, an expert witness testified that the defendant's mental defect prevented him from being able to conform his conduct and formulate the requisite intent at the time he shot the victim. In rebuttal, the State presented expert-witness testimony that the defendant appreciated the nature of his conduct and was able to conform his conduct on the day he shot the victim. The court, however, would not allow the defendant to have the State's witness read the part of her report that indicated that the defendant's behavior did not appear to be premeditated. On appeal, the defendant argued that the circuit

court erred in granting the State's motion. This court held that expert testimony could be elicited with respect to the question of whether a defendant could conform his conduct to the requirements of the law as part of the insanity defense but that the expert witnesses could not testify regarding whether the defendant formed the required specific intent to murder at the time the murder was committed. The court noted that expert testimony on whether a defendant lacked the capacity to form intent is probative, but questioned whether opinion evidence on whether the defendant actually formed the necessary intent at the time of the murder is. This court held that whether the defendant killed the victim purposely on a specific day at least had the potential for being misleading and confusing to the jury. *Stewart*, 316 Ark. at 159, 870 S.W.2d at 755–756.[1]

*Stewart* precludes an expert witness from testifying whether the defendant formed the required specific intent at the time the murder was committed. Here, however, Dr. Kittrell never opined regarding whether Edwards formed the purpose of causing the death of another person when he caused the death of Fowlks or attempted to cause the death of Williams. Thus, the limitation on expert testimony set out in *Stewart* has no application to this case.

Edwards bases his arguments on the assumption that Dr. Kittrell opined that he lacked the capacity to form intent. Doctor Kittrell's report, however, only stated that, at the time of the offenses, "several factors impacted Mr. Edwards's capacity for purposeful conduct." In his

---

[1]We have discussed the holding in *Stewart* in other cases, but in those cases the defendants did not raise the affirmative defense of mental disease or defect that was raised in *Stewart* and in the case at bar. *See Bruner v. State*, 2013 Ark. 68, 426 S.W.3d 386; *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818; *Bankston v. State*, 361 Ark. 123, 205 S.W.3d 138 (2005); *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000); *DeGracia v. State*, 321 Ark. 530, 906 S.W.2d 278 (1995).

summary, Dr. Kittrell noted that Edwards "had impairment in his capacity to have culpable mental state required to establish an element of the offenses charged." Thus, Dr. Kittrell never stated that Edwards lacked the capacity to form intent, only that it was impacted or impaired. The circuit court instructed Dr. Kittrell that he could not opine "as to his ability to form the requisite mental intent for this crime." The circuit court's instruction can be read to mean that Dr. Kittrell could not testify regarding whether Edwards formed the required specific intent to purposely cause death at the time the murder was committed. As expressed in *Stewart*, expert-witness testimony on whether a defendant generally lacked the capacity to form intent is probative. Edwards, however, did not present testimony that he lacked the capacity to form intent.

Furthermore, Dr. Kittrell did opine that Edwards's psychotic disorder did not render him unable to appreciate the criminality of his conduct and did not render him unable to conform his conduct to the requirements of the law. Thus, despite Edwards's claim that the jury could have still found him not guilty by reason of mental disease or defect, there was no testimony to support these two elements of the affirmative defense. In this sense, *Stewart* is even farther afield from the case at bar because in *Stewart*, the expert witness testified that the defendant's mental defect prevented him from being able to conform his conduct and formulate the requisite intent at the time he shot the victim.

Edwards further contends that was prejudiced because there was a reasonable probability that the jury might have found him guilty of a lesser offense or given him a lesser sentence. We again note that Dr. Kittrell never stated that Edwards lacked the capacity to

form intent. Also, there was ample evidence of purposeful conduct. Edwards left the bar, returned with a shotgun, sought out and addressed Fowlks prior to shooting him, and then shot him twice. Edwards also addressed Williams and then fired twice in her direction. *See Fink v. State*, 2015 Ark. 331 (holding, though not in the context of determining prejudice, that evidence was sufficient to establish purposeful conduct).

In conclusion, (1) Dr. Kittrell did not testify regarding whether Edwards formed the specific intent to purposely cause death when he fired his shots at Fowlks and Williams; (2) Dr. Kittrell did not opine that Edwards lacked the ability to form the requisite intent; (3) Dr. Kittrell did testify that Edwards did not meet the elements of the affirmative defense; and (4) there was ample evidence of purposeful conduct. Accordingly, we conclude that, contrary to Edwards's argument on appeal, *Stewart* does not compel this court to hold that the circuit court abused its discretion or to hold that Edwards suffered prejudice. While Edwards further asserts that the circuit court denied him due process by depriving him of his only defense, he did not raise the argument to the circuit court, so it was not preserved for appellate review. *Hinkston v. State*, 340 Ark. 530, 534–35, 10 S.W.3d 906, 909 (2000). Accordingly, we affirm the circuit court.

Affirmed; court of appeals opinion vacated.

DANIELSON and WYNNE, JJ., dissent.

**ROBIN F. WYNNE, Justice, dissenting.** While I agree with much of the majority's analysis, I must dissent because I conclude that this case should be reversed and remanded for a new trial. I fully agree that *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994), should

not be read to prohibit expert testimony regarding a defendant's *capacity* to form the specific intent to commit murder. Because appellant was charged with first-degree murder and criminal attempt to commit first-degree murder, the State in this case was required to prove that appellant acted with the purpose of causing the death of another person. *See* Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2013). A person acts purposely with respect to his conduct or as a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). Evidence that the defendant suffered from a mental disease or defect is admissible to prove whether the defendant had the kind of culpable mental state required for commission of the offense charged. Ark. Code Ann. § 5-2-303 (Repl. 2013). In the present case, Dr. Kittrell opined in his report that, at the time of the offenses, appellant suffered from a mental disease, namely, psychotic disorder not otherwise specified. Dr. Kittrell also found that several factors impacted appellant's capacity for purposeful conduct with respect to the charged offenses; he stated that appellant was experiencing considerable emotional upheaval based on several factors, among them appellant's untreated psychosis (hallucinations and paranoia). At the October 7, 2013 competency hearing, Dr. Kittrell testified regarding appellant's capacity to form the culpable mental state. The majority notes that Dr. Kittrell never stated that appellant lacked the capacity to form intent, only that it was impacted or impaired. In my view, this distinction is not important in deciding whether expert testimony on this point was admissible; Dr. Kittrell expressed his opinion on the issue of appellant's capacity to form the requisite intent, regardless of whether that opinion was definitive.

The evidence regarding whether appellant had the capacity to form the culpable mental state to commit first-degree murder was relevant and probative, and in my view it was an abuse of discretion for the trial court to exclude it. Of course, whether appellant had the required intent to murder Toby Fowlks at the time of the shooting was for the jury to decide. *See Stewart*, 316 Ark. at 159, 870 S.W.2d at 755. It is well settled that the jury is not bound to accept the opinion testimony of any witness as true or conclusive, including the opinion testimony of experts. *Navarro v. State*, 371 Ark. 179, 191, 264 S.W.3d 530, 539 (2007) (citing *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007)). In sum, whether appellant had the culpable mental state to commit first-degree murder was a fact in issue, Dr. Kittrell's opinion regarding appellant's capacity to form that intent was probative, and that evidence was admissible. Furthermore, its exclusion was not harmless. It was a crucial part of appellant's defense, a key corollary to the defense's evidence that appellant suffered from a mental disease at the time of the shooting.

I respectfully dissent.

DANIELSON, J., joins.

*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.