

Cite as 2017 Ark. 207

# SUPREME COURT OF ARKANSAS

No. CR–16–891

| | | |
|---|---|---|
| ALAN RAY EDWARDS | | **Opinion Delivered:** June 1, 2017 |
| | APPELLANT | |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [26CR-12-539] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| | | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Alan Ray Edwards appeals from the denial of his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. On appeal, Edwards argues that the circuit court erred by denying his petition because his trial counsel was ineffective for (1) failing to elicit testimony from his expert regarding his lack of capacity to form intent or, alternatively, failing to argue that ruling such testimony inadmissible violated due process by depriving appellant of his only defense; (2) failing to pursue a self-defense theory of the case; and (3) failing to present adequate mitigation evidence at sentencing. We affirm.

Appellant was convicted of murder in the first degree with a firearm enhancement and attempted murder in the first degree. He was sentenced to a total of sixty-five years' imprisonment. His convictions were affirmed by this court on direct appeal. *Edwards v. State*, 2015 Ark. 377, 472 S.W.3d 479. The relevant facts, as recited in our opinion on direct appeal are as follows:

The shootings occurred at Pop–A–Top Club in Hot Springs, Arkansas. A number of patrons and employees testified at the trial. To summarize, on August 28, 2012, Edwards offered a $200 tip to Eliza Beth McDaniel, a bartender, which she refused. Edwards nevertheless slipped the money into her unattended purse. The next day, Edwards returned to the bar and asked the bartender if she had received the "surprise." She unsuccessfully tried to return the money to Edwards. On August 31, 2012, he returned to the bar and asked if she would go out with him. Because Edwards was married, she declined. Edwards then demanded the money back and threatened to kill her. She returned $62, which was all the money she had on her, and offered to return the remainder in a few days. Edwards told her that she had better return the rest of the money or he would kill her and everyone in the bar. The bartender reported the incident to the owner and the manager, but rather than reporting it to the police, the owner and the manager decided that Edwards would no longer be allowed in bar.

On September 3, 2012, at 3:00 p.m., Edwards entered the bar and was told by the acting manager, Teresa Williams, that he could not enter the bar until he spoke with the owner. Edwards began arguing, and a customer, Toby Fowlks, told Edwards that he needed to leave. Edwards told Fowlks that he was not scared and that Fowlks could not "kick" his "ass." Fowlks chased Edwards out of the bar. Outside, Fowlks struck Edwards in the face, and Edwards left in his vehicle.

Less than an hour later, Edwards returned to the bar with a shotgun in his hands, and asked, "Where's that son of a bitch that hit me?" After seeing Fowlks, Edwards said, "Oh, there you are," and shot Fowlks twice, killing him. Edwards then turned to the bartender and said, "Fuck you too." He shot twice at her but she ducked behind a gaming machine, thus avoiding injury. When Edwards left the bar, other patrons at the bar followed him, and after a struggle, the patrons were able to disarm Edwards.

Prior to trial, Edwards obtained the services of Dr. Albert Kittrell, an expert in the field of psychiatry and forensic psychiatry. Doctor Kittrell conducted an evaluation of Edwards in which he opined in his report that Edwards suffered from a mental disease—a psychotic disorder not otherwise specified—at the time of the offenses. Doctor Kittrell noted that, at the time of the offenses, "several factors impacted Mr. Edwards's capacity for purposeful conduct" and that he was "experiencing considerable emotional upheaval." Doctor Kittrell, however, opined that, even though Edwards was diagnosed with a mental disease and was psychotic at the time of the offenses, Edwards nonetheless did not lack the capacity to appreciate the criminality of his conduct and did not lack the capacity to conform his conduct to the requirements of the law at the time of the offenses. In his summary, Dr. Kittrell noted that "Edwards had impairment in his capacity to have culpable mental state required to establish an element of the offenses charged."

At an in-camera hearing on Edwards's fitness to proceed, with the circuit court presiding, Dr. Kittrell was asked on what he "base[d] the fact that [Edwards] had the impairment of the ... culpable mental state?" Dr. Kittrell noted the diagnosis of a psychotic disorder not otherwise specified, meaning that "at some point he had lost contact with reality and when I saw him he continued to have ongoing impairment." Doctor Kittrell noted that Edwards told him that he hallucinated and heard voices and was suspicious and paranoid. Doctor Kittrell noted that Edwards had not received treatment for these conditions.

On the day of the trial, the State argued that Dr. Kittrell should not be allowed to testify that he did not believe that Edwards "had the ability to do a purposeful mental state." In response, Edwards's attorney asserted that Edwards was entitled to a defense and that the jury should determine whether he had a culpable mental state. The court took the motion under advisement, and during the trial, the court ruled that "Dr. Kittrell cannot testify to his opinion as to whether [Edwards] had the capacity to form a purposeful intent." The court instructed Dr. Kittrell that he could render an opinion on Edwards's "ability to conform his conduct to the requirements of the law" but could not opine "as to his ability to form the requisite mental intent for this crime."

During his testimony, Dr. Kittrell again opined that Edwards suffered from a mental disease, a psychotic disorder not otherwise specified. He noted that Edwards suffered from auditory hallucinations. The doctor further noted that Edwards was limited in his ability to handle stressful situations. On cross-examination, Dr. Kittrell testified that in his report he had opined that Edwards's psychotic disorder did not render Edwards unable to appreciate the criminality of his conduct and did not render him unable to conform his conduct to the requirements of the law.

*Edwards*, 2015 Ark. 377, at 2–4, 472 S.W.3d at 481–82.

Following the disposition of his direct appeal, appellant filed a petition for postconviction relief in the trial court. In the petition, appellant alleged that his trial counsel provided ineffective assistance of counsel by (1) failing to elicit testimony from Dr. Kittrell regarding whether appellant generally had the capacity to form intent, or alternatively, failing to argue that ruling such testimony inadmissible violated due process by depriving appellant of his only defense; (2) not pursuing a self-defense theory of the case; (3) refusing

to allow appellant to testify on his own behalf;[1] and (4) failing to present adequate mitigation evidence at sentencing. The trial court denied without a hearing as to issues 1, 2, and 4. The trial court held a hearing on issue 3. Following the hearing, the trial court entered an order in which it denied the petition on all grounds. This appeal followed.

In an appeal from a trial court's denial of a petition under Rule 37.1, the question presented is whether, based on the totality of the evidence, the trial court clearly erred in holding that counsel's performance was not ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Jackson v. State*, 352 Ark. 359, 105 S.W.3d 352 (2003). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002).

The *Strickland* standard is a two-part test. When a convicted defendant complains of ineffective assistance of counsel, he must show first that counsel's performance was deficient through a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. Additionally, the petitioner must show that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001) (per curiam).

---

[1] Appellant has abandoned this argument on appeal.

SLIP OPINION

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Burton v. State*, 367 Ark. 109, 238 S.W.3d 111 (2006).

Appellant first argues that his trial counsel provided ineffective assistance of counsel by either failing to elicit testimony from Dr. Kittrell regarding his general capacity to form intent or failing to argue that ruling such testimony inadmissible violated due process by depriving appellant of his only defense. The sole defense put forth by the defense at trial was that appellant was not guilty as a result of mental disease or defect. It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged he or she lacked capacity as a result of mental disease or defect to conform his or her conduct to the requirements of law or appreciate the criminality of his or her conduct. Ark. Code Ann. § 5-2-312(a)(1) (Repl. 2013). Appellant was convicted of first-degree murder, which requires the defendant to act with purposeful conduct. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2013). A person acts purposely with respect to his conduct or as a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

Dr. Kittrell never opined that appellant was unable to either conform his conduct to the requirements of the law or appreciate the criminality of his conduct. Therefore, as we noted in our opinion on direct appeal, there was no evidence to support two elements of

the affirmative defense, nor does appellant argue that counsel was ineffective for failing to present such evidence or even that such evidence existed. There was also ample evidence of purposeful conduct submitted at trial, as there was testimony that appellant came into the bar after a fight with a shotgun, indicated he was looking for the man who had fought with him, then shot that man twice. The State also submitted surveillance-camera footage of the incident. As appellant would have been unable to present a successful case on the affirmative defense regardless of any testimony from Dr. Kittrell regarding his general capacity to form intent, he has failed to demonstrate that he was prejudiced by counsel's alleged deficient performance. We affirm on this point.

Appellant next argues that his trial counsel was ineffective for failing to present a self-defense theory of the case. It is undisputed that appellant went into the bar, carrying a shotgun, looking for the person he fought with earlier, whom he then shot. We have held that the justification of self-defense is not available to a defendant who arms himself and goes into a place in anticipation that another will attack him. *See Kemp v. State*, 348 Ark. 750, 74 S.W.3d 224 (2002); *see also Girtman v. State*, 285 Ark. 13, 684 S.W.2d 806 (1985). That is exactly what appellant did. As the justification of self-defense was not available to appellant, his counsel necessarily did not render ineffective assistance of counsel by failing to raise the defense.

Finally, appellant argues that his trial counsel was ineffective for failing to present sufficient mitigation evidence at sentencing. As stated above, appellant was sentenced to a total of sixty-five years' imprisonment. Appellant concedes that he could have received a maximum sentence of life imprisonment plus fifteen years on the first-degree-murder charge

and thirty years' imprisonment on the attempted first-degree-murder charge. Appellant accordingly concedes that he received less than the maximum sentence. He also acknowledges that we have held that a defendant who is sentenced to less than the maximum sentence cannot show prejudice from the sentence alone. *See State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002) (holding that a defendant could not demonstrate prejudice due to counsel's alleged failure to present mitigating evidence during the sentencing phase because he received less than the maximum sentence). Instead of attempting to demonstrate prejudice in some other manner, appellant argues that we should not apply our precedent in his case because he will be in his nineties when he is first eligible for release, resulting in his being sentenced to a "de facto" life sentence. We decline appellant's invitation to break with our established precedent. As appellant has failed to demonstrate prejudice, the denial of his claim is affirmed.

Affirmed.

*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.