ROBERT J. GLADWIN, Judge
Appellant James England filed a petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2016) on July 7, 2016, and with leave of the Pulaski County Circuit Court, he filed an amended petition for relief, which was denied on March 29, 2017, without a hearing. England filed a motion to reconsider, clarify, and preserve, but the circuit court denied that motion by order filed on April 26, 2017, also without a hearing. England argues that the circuit court committed reversible error in denying his amended petition without holding an evidentiary hearing.
A Pulaski County jury convicted England of one count of rape and two counts of incest based on the allegations of his two stepdaughters. He was sentenced to concurrent terms of imprisonment in the Arkansas Department of Correction-fifteen years on the rape charge and ten years on each incest charge in its sentencing order filed on May 19, 2015. This court affirmed England's convictions in an opinion issued on April 20, 2016. See England v. State , 2016 Ark. App. 211, 489 S.W.3d 721. The *558 mandate from that appeal was filed on May 12, 2016.
On July 7, 2016, with assistance of counsel, England filed a timely petition for relief under Rule 37 with the Pulaski County Circuit Court, alleging numerous errors by trial counsel and containing a proper verification. He also filed a motion for leave to file an amended and enlarged Rule 37 petition on the same date, and that motion was granted by an order filed by the circuit court on August 22, 2016. England filed an amended petition on October 17, 2016, the State filed a response on December 20, 2016, and England filed a reply to the State's response on December 28, 2016. The circuit court did not hold a hearing on the matter, but instead, following the parties' submissions, entered a sixteen-page written order on March 29, 2017, that denied relief. England filed a motion to reconsider, clarify, and preserve, but the circuit court denied that motion by order filed on April 26, 2017, also without a hearing. The circuit court relied on the parties' pleadings, as well as an extensive review of the trial record, and concluded that the mistakes that England alleged trial counsel had made would have been meritless and otherwise would not have changed the outcome of his trial. On appeal, England repeats some, but not all, of the claims raised below and argues that the circuit court erred by denying these claims for relief. Arguments that were made below but not raised on appeal are considered abandoned. State v. Grisby , 370 Ark. 66, 69, 257 S.W.3d 104, 107 (2007).
This court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. Walden v. State , 2016 Ark. 306, at 2-3, 498 S.W.3d 725, 728-29 ; Kemp v. State , 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Walden , 2016 Ark. 306, at 2-3, 498 S.W.3d at 728-29. When considering an appeal from a circuit court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on the totality of the evidence under the standard set forth by the United States Supreme Court in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. Id. Under the two-prong standard outlined in Strickland , to prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Id. The reviewing court must indulge in a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. Id. The petitioner claiming ineffective assistance of counsel has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. Id. The second prong requires a petitioner to show that counsel's deficient performance so prejudiced his defense that he was deprived of a fair trial. Id. Consequently, the petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial *559 process that renders the result unreliable. Id.
A person seeking postconviction relief on a claim of ineffective assistance that is based on the failure of counsel to make a motion or objection must show that counsel could have made a successful argument in order to demonstrate the prejudice required under the Strickland test. Breeden v. State , 2014 Ark. 159, at 6-7, 432 S.W.3d 618, 624 (per curiam). Failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. Id. ; Greene v. State , 356 Ark. 59, 70, 146 S.W.3d 871, 880 (2004).
Arkansas Rule of Criminal Procedure 37.3(c) provides that an evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the prisoner is entitled to no relief. See Wooten v. State , 338 Ark. 691, 1 S.W.3d 8 (1999). The circuit court, in its discretion, can deny postconviction relief without a hearing if it concludes that the petitioner is entitled to no relief. Mancia v. State , 2015 Ark. 115, 459 S.W.3d 259. Rule 37.3(a) states that
[i]f the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings.
Without the specific findings, there can be no meaningful review in this court, because this court determines whether the findings are supported by a preponderance of the evidence. Rackley v. State , 2010 Ark. 469, 2010 WL 4922390. We are not required to scour the record in a Rule 37.1 appeal to determine if the petition is wholly without merit when there are no written findings. Id. When a hearing is not held, it is the function of the circuit court to make written findings. Id.
Before addressing England's arguments on appeal, it is necessary to review the evidence adduced at his trial. The trial record demonstrates that the State presented testimony from England's ex-wife, Peggy England (now Stane), and former stepdaughters, L.B. and S.B., who detailed the control and manipulation England exerted over their lives, including repeated threats to kill himself to get them to behave in ways he wanted. Other witnesses for the State included Mark Brice, criminal investigator for the Arkansas State Police, who testified regarding the investigation. The State also presented testimony from Richard Love, a cellmate of England's, who testified about information England volunteered to him about the sexual abuse of his stepdaughters. Debbie Keathley, employer of one of the stepdaughters, S.B., testified for the State about her interaction with S.B. and the effect that England had on her. The State presented testimony from England's brother, Cleo England, about the general family dynamics. Danny Lawson and Kenney Munn, lifelong friends of England's, testified for the State, indicating that they knew about rumors of inappropriate relations between England and S.B. but that they never personally observed anything of concern. Dr. Kevin Claybrook, England's urologist, presented extensive testimony for the State regarding England's medical treatment. Ray Byrd, England's former employer and friend, provided testimony for the State about his past dealings with England both personally and professionally. England testified on his own behalf and denied all the allegations against him.
I. Failure to Obtain Phone Records
On the charges against England for rape and two counts of incest, the *560 allegations were that England engaged in sexual relations with his stepdaughters. At trial, it was largely a matter of credibility between England and his two stepdaughters, who were the only ones that professed actual knowledge of the offenses. England claims that his ability to prove when he was on the road as a truck driver was important. England submits that one way to support the notion that he was on the road is with call records to show that he was calling or texting people in other states and calling or texting Peggy, his wife, or the alleged victims, as he would presumably not be calling or texting Peggy or the alleged victims during times he was at the residence in Perry County.
He points out that L.B. alleged that England texted her hundreds of times in the mornings to come into his room and have sex with him. At trial, L.B. testified, "I don't know what he said but it was always a text to come in there." Considering L.B.'s statement, along with her claim that England had sex with her approximately 400 times, England states that there should be hundreds of text messages around 6:30 a.m. when Peggy would leave for work. As pleaded, those cell-phone records refute this allegation. There are no records of either morning text messages or phone calls between England and L.B. in the record before us. England maintains that this evidence would have destroyed L.B.'s credibility and there is a reasonable probability that the evidence would have resulted in a not-guilty verdict on the rape claim.
Additionally, there is a reasonable probability that if one alleged victim, L.B., was discredited, it would have resulted in a not-guilty verdict on both claims. He urges that there is no strategic or tactical reason for not acquiring the phone records. The cell-phone records, as pleaded, are currently in postconviction counsel's possession; however, because there was no hearing, they are not in the record for this court's review.
England submits that the circuit court denied his claim because England did not attach the phone records to his Rule 37 petition. He maintains that the circuit court had no authority for its claim that he should have attached 7000 pages of phone records to his Rule 37 petition. He claims that neither this court nor our supreme court has ever made it a requirement to attach evidence to the petition. Petitions routinely do not include attached evidence, and he urges that no court should make it a requirement. He cites Rackley , supra , for the proposition that attaching records to the petition would obviate the entire purpose of the evidentiary hearing. He urges that this court should not permit the circuit court to institute new requirements that contravene precedent from the Arkansas Supreme Court.
We hold that England's assertion, that the circuit court's denial creates a new requirement, is without merit. As an initial matter, England's reliance on Rackley , supra , is distinguishable. Rackley involved an appeal from a circuit court's dismissal of a Rule 37 petition where the circuit court neither held a hearing nor issued written findings. Id. Here, after filing his initial petition for postconviction relief, England moved to amend and enlarge the petition, and the motion was granted. Contrary to England's argument, there is no authority that prevented him from attaching these phone records to his amended Rule 37 petition, and the circuit court was not attempting to create a new rule.
Although England claims now that he has approximately 7000 pages of phone records, England fails to mention whose phone records he obtained, and it is not clear if he is speaking about just his own phone records or if he somehow obtained *561 others. His claim that exculpatory evidence could be found in the phone records is mere speculation and precluded from Rule 37 relief. Simpson v. State , 355 Ark. 294, 138 S.W.3d 671 (2003). A Rule 37 hearing is not available to a petitioner in hopes of finding grounds for relief. Greene, supra.
Here, England argues that the circuit court's sole reason for rejecting England's claim that trial counsel was ineffective for not obtaining England's phone records was that England did not attach them to the petition. But our review of the circuit court's order denying his claim notes that England stated that he "did not attach those records to the petition because of the page limitations with the Rule 37 petitions. England is in the process of digesting those records into a format where this Court can easily digest them for their evidentiary value." The circuit court took issue with England for making that argument in a pleading after the circuit court had specifically allowed him to enlarge and expand his Rule 37 petition. The circuit court noted that it gave no limits on length when it permitted England to expand on his petition and expressly stated that it would certainly have examined any evidence England wished to present in the amended petition. We hold that the circuit court did not err in not allowing England to use the limited postconviction-hearing process to develop this evidence and that it was not required to hold a hearing on this claim.
II. Failure to Introduce Evidence That Prescriptions Taken by England Would Cause Depression
England notes that trial counsel's strategy was largely to prove that he was incapable of performing the sexual acts, especially to the degree asserted by the alleged victims, because of his erectile dysfunction. Despite that strategy, trial counsel failed to introduce the prescriptions and side effects of the medications that England was taking during the time frame of the allegations. He maintains that there is no strategic reason for not introducing the prescription medications taken by him that caused his depression because doing so would have supported the theme of the defense with available evidence that would not depend on witness credibility.
England notes that the State introduced testimony and evidence that he was depressed and had attempted suicide and that the State's theory was that the suicide attempts were feigned to control the alleged victims. England, however, claims that the suicide attempts were likely authentic side effects from the medications he was on and that evidence of those prescriptions would have been critical to rebut the State's allegations.
If he had been allowed a hearing on his Rule 37 petition, England explained, he would have presented evidence of the medications and their side effects. Instead, the jurors were left with the unrebutted presumption that the suicide attempts were fake and done solely to manipulate the alleged victims. England argues that the unrebutted assertion by the State significantly increased the credibility of the alleged victims and that there exists a reasonable probability of a not-guilty verdict had this error not occurred.
We hold that counsel was not ineffective for failing to offer testimony that England's prescription medicine could cause depression. During trial, England's urologist, Dr. Kevin Claybrook, testified on England's behalf that he had treated England for a variety of ailments, including prostate cancer, erectile dysfunction, hypogonadism (low testosterone ), chronic prostatitis, chronic pelvic pain syndrome, and pelvic dysfunction. Dr. Claybrook described how he treated patients with erectile *562 dysfunction and how he treated England initially with prescription medicine such as Viagra, Cialis, or Levitra. Dr. Claybrook also explained the treatment and surgery England had for prostate cancer. In describing England's condition after his surgery, Dr. Claybrook stated, "And he had fairly significant problems with depression, fairly significant problems with diminishment of sexual desire and erections. He complained of that fairly consistently following surgery. And the testosterone that we started on him, we actually started to try and help some of these chronic dystopic symptoms." Dr. Claybrook explained that testosterone could possibly help treat depression but that depression was a "multi-factoral" thing caused for many different reasons.
Dr. Claybrook was specifically asked whether he had notes or recollections regarding any experiences England had taking Viagra and Cialis, erectile-dysfunction drugs. He testified that England complained of severe headaches while taking Viagra, which is a very common side effect. Dr. Claybrook also explained that, when England was diagnosed with prostate cancer, he recommended that England see a psychiatrist to help alleviate some of his feelings of despair and despondency.
In addition, Dr. Claybrook was cross-examined by the State on the issues discussed during his direct examination. Any additional testimony would have been cumulative to the testimony regarding England's medications and possible side effects, including depression. Counsel's failure to present cumulative evidence is not a basis for postconviction relief, nor does it deprive a defense of vital evidence for the purposes of ineffective-assistance-of-counsel claims. Simpson, supra. England cannot demonstrate that the result of the trial would have been different if his attorney had presented more testimony about depression as a possible side effect of his prescription medications. There was no need for a hearing on this claim.
III. Failure to Sever Allegations of the Stepdaughters-Victims
England notes that trial counsel's assistance was ineffective because counsel never made a motion to sever the charges. He submits that the charges had holes in their respective allegations and little corroboration; however, by failing to sever the charges, trial counsel allowed the prosecution to use the two allegations to support one another. England argues that a review of the two allegations makes it clear that he had the right to a severance because they were joined solely on the basis that they involved similar conduct. See Ark. R. Crim. P. 22.2 (2017); see also Clay v. State , 318 Ark. 550, 886 S.W.2d 608 (1994).
Additionally, England maintains that under due-process and fair-trial guarantees of the United States and Arkansas Constitutions, he was entitled to a severance of the charges. Trial counsel never asked for, therefore never received, a severance of the charges; accordingly, the jury was allowed to use the two accusations to support one another, thereby unfairly prejudicing England at trial.
England argues that, for two reasons, trial counsel cannot rest on the defense that a severance motion can be denied when the testimony of other victims would be admissible under Arkansas Rule of Evidence 404(b) (2017). First, Arkansas Rule of Criminal Procedure 22.2 clearly states that England would have been entitled to a severance. Therefore, any assumptions about what the court would have done should be in accordance with the law. Second, even if the testimony of the other victim was admissible under Rule 404(b), it would have been accompanied by an instruction that it was admissible only to *563 show motive, intent, or common plan and not to show propensity. Instead, the jury could use it for any purpose. England claims that trial counsel could have minimized the jury's use of one charge to support the other by requesting a jury instruction against using the evidence in one charge to support a conviction on the other, but counsel did not request the instruction.
England cites cases from other states to support his proposition that courts have held it to be ineffective assistance of counsel to fail to request a severance of the charges. See State v. Sutherby , 165 Wash.2d 870, 204 P.3d 916 (2009) ; Wilkerson v. State , 728 N.E.2d 239 (Ind. App. 2000).
England maintains that S.B.'s allegations were questionable because S.B. had made previous denials, had a significant delay in reporting, had motive to fabricate the allegations, and had made threats to England that she would send him to prison if he did not give everything to her mother in the divorce. He claims that the allegations by L.B. were outlandish considering the number of times L.B. claimed she had sex with England over a short period of time. Additionally, England submits that there was little evidentiary support for the claim that L.B. was alone with England enough to have sex hundreds of times, even assuming he had the ability to have sex that many times. He notes that these two charges propped each other up and that there is a reasonable probability that he would have been found not guilty on both of the charges if they had been tried separately.
Arkansas Rule of Criminal Procedure 22.2 provides that when two or more offenses are joined for trial solely on the ground that they involve the same or similar character and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses. See Ark. R. Crim. P. 22.2. We hold that Rule 22.2 does not apply in this situation.
England would not have been able to show that his actions were not part of a single scheme or plan as required by Rule 22.2. There was extensive, intertwined testimony from L.B. and S.B. about his sexual relations with both girls, who lived in the same house with England. L.B. testified that there were times when England would take her and S.B. down to his workshop and he would have sex with one girl while the other girl watched to make sure no one came to the workshop. A man who makes one stepdaughter stand guard while he has sex with the other stepdaughter in the same room constitutes a single scheme or plan.
England's reliance on Clay , supra , is misplaced. Clay involved five separate sexual assaults in different manners against five separate victims in different locations over the period of a year. See Clay, supra. The crimes in Clay did not involve children in the same household. Here, there was a clear single scheme or plan propagated against both of his stepdaughters over a period of years. Had the charges been severed, much of the same testimony would have been relevant and admissible in each trial to show England's intent, motive, common scheme or plan, and each sister would have had to testify in two trials rather than one.
A petitioner seeking postconviction relief on a claim of ineffective assistance that is based on the failure of counsel to make a motion must show that counsel could have made a successful argument to demonstrate the prejudice required under the Strickland test. Clayton v. State , 2013 Ark. 453, at 4, 2013 WL 5968926. Here, the record before us supports that there was a clear, single scheme or plan in place, and a motion to sever would have been unsuccessful.
*564 The failure to make a meritless motion does not constitute ineffective assistance of counsel. Caery v. State , 2014 Ark. 247, 2014 WL 2158140. Because England did not demonstrate that a motion to sever would have had any merit, the circuit court did not err in denying relief on his claim of ineffective assistance and was not required to hold an evidentiary hearing.
IV. Failure to Put on Proof That S.B. Was Untruthful
England submits that trial counsel was aware that S.B. had previously committed acts of untruthfulness, namely that she had forged a signature to steal money. However, trial counsel failed to call any witnesses to testify about S.B.'s lack of truthfulness. England maintains that trial counsel erred by not putting on a witness to testify about S.B.'s untruthfulness, especially because this is a case that is primarily a battle of credibility between the alleged victims and England. He argues that there is no strategic or tactical reason for not attacking the credibility of S.B. in this case, and he claims that there were witnesses available to testify about S.B.'s untruthfulness. Appellant urges that had trial counsel attacked S.B.'s prior lack of truthfulness, there is a reasonable probability that he would have received a not-guilty verdict.
Our review of the record indicates that England's trial counsel questioned S.B. about the event in question-when some of her family alleged that she had forged her grandmother's name on a check. S.B. testified that she was never investigated and was never contacted by the police. When a petitioner alleges ineffective assistance of counsel concerning the failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. Stevenson v. State , 2013 Ark. 302, at 4, 2013 WL 3946082. Here, England simply states there are witnesses available to testify, which is insufficient. Moreover, England failed to (1) provide the circuit court with names of witnesses, (2) show what their testimony would contain, or (3) show that their testimony would be admissible. England's claim is without merit, and the circuit court was not required to hold an evidentiary hearing on this claim.
V. Failure to Call Character Witnesses
England cites Commonwealth v. Castellana , 277 Pa. 117, 121 A. 50, 51 (1923), for the proposition that evidence of an accused's character is admissible, because he may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character. He asserts that in a rape case, the verdict typically hinges entirely on the credibility of the victim versus that of the defendant. "In a case ... where intent and credibility are decisive factors leading to either acquittal or conviction, the accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury." See Com. v. Shapiro , 223 Pa.Super. 15, 297 A.2d 161, 163 (1972) ; see also Shelton v. State , 287 Ark. 322, 334, 699 S.W.2d 728, 734 (1985).
England argues that trial counsel's failure to investigate, interview, and call character witnesses on his behalf constituted ineffective assistance of counsel. See Com. v. Luther , 317 Pa.Super. 41, 463 A.2d 1073 (1983). He notes that Arkansas courts have reversed and remanded for new trials when character evidence was not allowed on pertinent traits. See Finnie v. State , 267 Ark. 638, 593 S.W.2d 32 (1980) ; Shelton, supra. England argues that if Arkansas appellate courts are willing to reverse and remand for not allowing character evidence, *565 it should stand that failure to elicit such testimony would constitute ineffective assistance of counsel.
England cites State v. Dillard , 338 Ark. 571, 998 S.W.2d 750 (1999), in which our supreme court held that when almost all the evidence was coming from two alleged victims, it was ineffective not to put on character witnesses against the alleged victims. England submits that several individuals, including Jodi Felkins and Cleo England, would have testified at trial that he is a truthful person, but they were not asked to do so by trial counsel. He claims that there was no strategic reason for not eliciting this testimony and maintains that if trial counsel had elicited testimony that England is a truthful person, there is a reasonable probability that he would have been found not guilty.
Decisions regarding witnesses have long been considered to constitute trial strategy and are outside the purview of Rule 37. Hickey v. State , 2013 Ark. 237, 428 S.W.3d 446. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. Johnson v. State , 325 Ark. 44, 924 S.W.2d 233 (1996).
Although England claims that Cleo England and Jodi Felkins would have testified that he is a truthful person, Cleo England actually was the first witness for the defense and testified that he never noticed anything inappropriate between England and either stepdaughter.
Addressing England's argument that Arkansas courts have reversed and remanded for new trials where character evidence was not allowed on pertinent traits, citing Finnie , supra , and Shelton , supra , we hold that these cases are distinguishable. First, both Finnie and Shelton were direct appeals of murder convictions rather than Rule 37 proceedings. Second, both defenses sought to introduce evidence that the defendant was law abiding and of a nonviolent nature, which is traditionally admissible in murder cases. See Finnie ; Shelton .
We also hold that England's reliance on Dillard , supra , is misplaced. In Dillard , our supreme court affirmed the circuit court's finding that trial counsel was ineffective for failing to interview a victim's sister who trial counsel knew held the opinion that the victim-her sister-had a problem telling the truth and a reputation for dishonesty. Id. England's situation is distinguishable. The mere fact that a witness or witnesses existed who could have offered beneficial testimony is not, in itself, proof of trial counsel's ineffectiveness. Smith v. State , 2015 Ark. 165, 459 S.W.3d 806. Moreover, had trial counsel introduced character-witness testimony, the State would have been permitted to rebut that testimony by questioning those witnesses about prior bad acts under Arkansas Rule of Evidence 608 (2017).
England cannot show that trial counsel's failure to call Cleo England or Jodi Felkins to testify about his truthful character was unreasonable. At most, their testimony would have challenged the alleged victims' credibility. To demonstrate prejudice, England must establish that there was a reasonable probability that, had counsel presented the witnesses, the outcome of the trial would have been different. Smith, supra. For the reasons set forth above, England cannot show that the outcome of his trial would have been different had counsel called Jodi Felkins and Cleo England as character witnesses; accordingly, the circuit court was not required to hold a hearing to further develop the issue.
VI. Failure to Object and Request a Mistrial Due to Prosecutor's Statement That It Was the Jury's Duty to Find England Guilty
England next argues that trial counsel's failure to object and request a *566 mistrial when the prosecuting attorney stated that it was the jury's duty to stand up for the victims and find England guilty of all charges amounted to ineffective assistance of counsel. He cites multiple out-of-state cases that have found it to be error for the prosecuting attorney to make similar comments. See People v. Nelson , 193 Ill.2d 216, 250 Ill.Dec. 10, 737 N.E.2d 632 (2000) ; People v. Castaneda , 299 Ill.App.3d 779, 233 Ill.Dec. 916, 701 N.E.2d 1190 (1998) ; Pacifico v. State , 642 So.2d 1178 (Fla. Dist. Ct. App. 1994) ; State v. Acker , 265 N.J.Super. 351, 627 A.2d 170 (App. Div. 1993). The prosecuting attorney's comments were not objected to by England's trial counsel, and he maintains that there was no strategic or tactical reason not to object and request a mistrial. He claims that the circuit court should have granted a mistrial or, at the very least, instructed the jury to disregard the prosecuting attorney's comments. England submits that there is a reasonable probability that the jury would have reached a different verdict had the prosecuting attorney's comments been objected to by his trial counsel and that a different outcome would certainly have occurred had the circuit court granted a mistrial.
We acknowledge that our supreme court has recognized that failing to object to an egregious comment by a prosecutor during a closing argument may constitute ineffective assistance of counsel. See Houghton v. State , 2015 Ark. 252, 464 S.W.3d 922. But a reversal of a judgment based on remarks made by counsel during closing arguments (or the failure to object to comments) is rare and requires that counsel make an appeal to the jurors' passions and emotions. Id. (citing Price v. State , 365 Ark. 25, 223 S.W.3d 817 (2006) ). Moreover, each plausible inference may be argued in closing. Id.
Our review indicates that the remarks made by the prosecuting attorney during her rebuttal were directly connected to both the testimony elicited by trial counsel and trial counsel's closing argument. In her closing argument, the prosecuting attorney reiterated how much control, sexually and in their day-to-day activities, England had exerted over his stepdaughters that continued into their adulthood. In her rebuttal, she reiterated that the victims have come before them with an "embarrassing, distasteful, nasty story," and merely asked the jury to "make a decision"-she did not ask the jury to find England guilty. The failure of trial counsel to make a meritless objection is not an instance of ineffective assistance of counsel. See, e.g. , Catlett v. State , 331 Ark. 270, 962 S.W.2d 313 (1998).
Additionally, before a petitioner can prevail on an allegation that counsel was wrong in not objecting during closing argument, the petitioner must establish that he was denied a fair trial by the failure to object. See, e.g. , Hayes v. State , 280 Ark. 509, 660 S.W.2d 648 (1983). We hold that the remarks, taken in their proper context either as rebuttal to trial counsel's closing argument, or, standing alone, do not establish that England was denied a fair trial. Therefore, the circuit court did not err in finding that England failed to demonstrate defective representation that influenced the outcome of the trial. The circuit court was not required to hold an evidentiary hearing on this claim.
VII. Eliciting Testimony That the Perry County District Judge Felt There Was an Improper Relationship Between England and S.B.
England notes that during the questioning of Mark Brice, criminal investigator for the Arkansas State Police, trial *567 counsel asked why Brice addressed S.B. concerning her relationship with England. England claims that trial counsel committed error in doing so because there was no "good answer"; accordingly, there was no tactical or strategic reason for asking the question. Upon asking, trial counsel elicited the following testimony from Brice: "In Perry County it was a widespread rumor. It was from police officers to the district judge there for that matter that they felt that there was an improper relationship between [England] and [S.B.]." England argues that it was error to elicit the testimony and further error not to object and move to have the jury instructed to disregard the statement. He maintains that the prejudice is clear from such a statement.
England asserts that the jury, hearing that law enforcement and the district judge in Perry County all believed that he is guilty, was tantamount to putting on several additional, highly persuasive witnesses that could not be rebutted by examination. Because England's case depended on his credibility versus that of the two alleged victims, he argues that it was error to elicit testimony that completely bolstered the State's case. England argues that there is a reasonable probability of a different outcome if that testimony had not been elicited.
The circuit court found that this was a typical "yes/no" cross-examination question within the scope of Brice's direct testimony. Moreover, trial counsel did not ask Brice about any particular person's opinion of England. Brice's response was a spontaneous comment. We hold that the circuit court correctly held that it could be reasonable strategy to not call attention to a statement and simply move on. When a decision by counsel was a matter of trial strategy and supported by reasonable professional judgment counsel's decision is not a basis for relief. See Bryant v. State , 2013 Ark. 305, 429 S.W.3d 193. Accordingly, the circuit court was not required to hold an evidentiary hearing on this claim.
VIII. Failure to Elicit Testimony Concerning Sexually Transmitted Diseases That Both Peggy England and England Contracted
England acknowledges that his trial counsel elicited testimony from England's urologist, Dr. Claybrook, as to whether England had a sexually transmitted disease in 2013; however, that is well after the allegations at issue occurred. England argues that trial counsel failed to elicit testimony from either Peggy or him indicating that they had contracted sexually transmitted diseases well before the allegations. England urges that was an error, as there was no strategic decision not to do so. England submits that the error was prejudicial because it would have significantly bolstered England's chance for a not-guilty verdict if he could have argued that the fact that the alleged victims do not have his sexually transmitted diseases proves he was not having sexual relations with them.
We disagree, noting that the circuit court held that England failed to present any evidence from the record that would lead it to believe his allegation that he or Peggy had a sexually transmitted disease or complained of symptoms before February 1, 2013. That was the day, Dr. Claybrook testified, that England was diagnosed with herpes and prescribed Valtrex. England's argument is conclusory and unsupported by the evidence presented at trial. A bare allegation, without supporting facts or legal authority, is insufficient to obtain postconviction relief. England had the opportunity to expand his conclusory argument in his amended Rule 37 petition, yet he failed to include specific facts to show what his trial counsel should have developed and introduced. Conclusory *568 statements that counsel was ineffective will not sustain a Rule 37 petition. Mancia, supra. The circuit court was not required to hold an evidentiary hearing on this claim.
IX. Failure to Call Witnesses at Sentencing
Finally, England claims that regardless of his guilt, trial counsel's failure to call witnesses at sentencing was error and prejudicial to his sentence. He submits that presentation of an inadequate sentencing phase, even in a non-death-penalty trial, constitutes ineffective assistance of counsel and requires reversal. See State v. Franklin , 351 Ark. 131, 89 S.W.3d 865 (2002) (Corbin, J., concurring); see also Pyle v. State , 340 Ark. 53, 8 S.W.3d 491 (2000) ; Helton v. State , 325 Ark. 140, 924 S.W.2d 239 (1996).
England notes that Cleo England and Jodi Felkins were in attendance and claims that they desired to testify at sentencing. Trial counsel did not call either witness to the stand. England argues that there is a reasonable probability that a jury would have given him less time if he had someone to speak on his behalf, relay his good deeds to the jury, and beg for mercy.
We disagree and hold that trial counsel was not ineffective for failing to call witnesses during sentencing. The three Arkansas cases England relies on all held that an ineffective-assistance-of-counsel claim based on failure to present sentencing evidence did not overcome the presumption that such a decision would be considered trial strategy. See Franklin , supra ; Pyle , supra ; Helton, supra. Moreover, our supreme court has held that in cases where a defendant is not subject to the possibility of the death penalty, the failure to present mitigating evidence is not ineffective assistance of counsel. State v. Smith , 368 Ark. 620, 249 S.W.3d 119 (2007).
England was sentenced to a total term of 180 months in prison. The maximum sentence he could have received for the offense of rape was life in prison. See Ark. Code Ann. § 5-4-401(a)(1) (Repl. 2013). Because England received a sentence less than the maximum sentence he could have received, he cannot show prejudice from the sentence. See Edwards v. State , 2017 Ark. 207, 521 S.W.3d 107. Furthermore, England does not and cannot show that the failure of his trial counsel to call witnesses during sentencing was outside the realm of normal trial strategy. We recognize that an attorney can be ineffective for failing to present mitigating evidence. See Jordan v. State , 2013 Ark. 469, 2013 WL 6046053. But when a petitioner under Rule 37 asserts that his trial counsel was ineffective for failure to call a witness or witnesses, it is incumbent on the petitioner to name the witness, provide a summary of that witness's testimony, and establish that the testimony would have been admissible. Id. Because England failed to provide a summary of the potential witnesses' testimony or establish that the testimony would have been admissible, the allegation was conclusory and did not merit further consideration. See id. A conclusory claim is not a ground for postconviction relief. Id. The burden is entirely on the petitioner in a Rule 37 proceeding to provide facts that affirmatively support the claims of prejudice. Id. Conclusory statements without factual substantiation are not sufficient to overcome the presumption that counsel was effective. Id. The circuit court was not required to hold an evidentiary hearing on this claim.
Affirmed; motion denied.
Virden and Vaught, JJ., agree.